NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE SHAKESPEARE GLOBE TRUST, <br><br> Plaintiff, <br><br> v. <br><br> KULTUR INTERNATIONAL FILMS, INC., KULTUR INTERNATIONAL FILMS, LTD., and DENNIS HEDLUND, <br><br> Defendants. | Civ. No. 18-16297 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter comes before the Court upon a Motion for Preliminary Injunction filed by Plaintiff the Shakespeare Globe Trust. (ECF No. 21.) Defendants Kultur International Films, Inc. ("Kultur"); Kultur International Films, Ltd. ("Kultur, Ltd."); and Dennis Hedlund (collectively, "Defendants") oppose. (ECF No. 22.) The Court has decided this Motion based on the written submissions of the parties and a hearing held on March 27, 2019. For the reasons stated herein, Plaintiff's Motion is granted.

### BACKGROUND

Plaintiff is a charity dedicated to promoting the works of William Shakespeare. (Compl. ¶ 15, ECF No. 1.) It owns and operates the Globe Theatre, which stages the works of Shakespeare and others and records these original performances. (*Id.* ¶ 16.) It owns copyright registrations of thirteen such recordings and also owns two trademark registrations. (*Id.* ¶¶ 17–18.)[1] Defendants

---

[1] The validity of these copyrights and trademarks has not been disputed. (*See* Opp'n at 3, ECF

sell DVDs and Blu-Ray discs on their website. (*Id.* ¶ 10.) Defendant Hedlund is the founder and chairman of both Defendants Kultur and Kultur, Ltd. (Compl. ¶ 31.)

On May 16, 2011, Plaintiff and Defendant Kultur entered into an Agreement providing Defendant Kultur with a license to "manufacture, distribute, sell, license, rent and exploit" Plaintiff's copyrighted works. (Agreement ¶ 4, ECF No. 15-1; *id.* at 6.) The Agreement "automatically renew[s] for a one (1) year term on a year-to-year basis unless one of the parties notifies the other party in writing of its intention to terminate the Agreement sixty (60) days prior to the expiration date of the Agreement." (*Id.* ¶ 3.) Under its terms, Defendant Kultur has six months after termination to sell off remaining inventory. (*Id.*) The Agreement further requires, "All notices hereunder must be in writing and must be personally delivered or be sent by registered or certified mail, postage prepaid." (*Id.* ¶ 12.) Finally, the Agreement contains the following arbitration clause: "The American Arbitration Association will have jurisdiction of any controversies regarding this Agreement; any action or other proceeding which involve such a controversy will be so arbitrated and not elsewhere." (*Id.* ¶ 14.)

On March 15, 2017, Chui-Yee Cheung, Film and Digital Distribution Manager for Plaintiff, sent an email to Gene Mirgorodsky of Defendant Kultur stating,

> Due to the Globe's filming budget being cut [and] recent events and upheaval at the Globe . . . we are sad to say that we hereby terminating [*sic*] our license agreement with Kultur. . . . [W]e are providing Kultur with 60 days termination notice. . . . A hard copy of this letter has also been posted to you . . . .

(Pl.'s Ex. I, ECF No. 21-2.) Plaintiff also presented what appears to be a letter with the same content as the email, although the letter is dated March 13, 2017. (*Id.*)

On April 12, 2017, Cheung emailed Geri Collins and Defendant Hedlund stating that Plaintiff "would be happy to consider extending the sell-off period to 12 months." (Pl.'s Ex. J,

---

No. 22 (refusing to comment on their validity).)

ECF No. 21-2.) The email also explained some of "the many reasons behind our terminating this agreement with Kultur." (*Id.*) On October 27, 2017, Plaintiff's lawyer David Tennant wrote a letter to Rupert Hall of Defendant Kultur stating that Defendant Kultur failed to pay invoices and royalties and thereby breached the Agreement. (Buckingham Letter Ex. C, ECF No. 8-1.) Tennant's letter went on to state:

> Notwithstanding Kultur's breach of the Agreement, the Globe has the right to unilaterally terminate the Agreement, for any reason, by providing Kultur written notice at least sixty days prior to the end of the Agreement term. The second renewal term of the Agreement would have expired on its terms May 16, 2017. The Globe provided timely notice of termination on March 15, 2017, pursuant to Section 3 and Section 12 of the Agreement. Therefore, the Globe rightly exercised its right to terminate the Agreement on March 15, 2017, and the Agreement was terminated on this day.

(*Id.*) On April 23, 2018, Tennant called Defendant Hedlund to demand that he stop all infringing activity. (Tennant Decl. ¶ 8, ECF No. 8-1.) Defendant Hedlund refused and threatened to "sell [the Globe Titles] at $2.99 and really bring down the market." (*Id.* (brackets in original).)[2]

Defendants continue to market and sell Plaintiff's copyrighted works and to use its trademarks. (Compl. ¶¶ 37–41.) Plaintiff filed the present suit on November 19, 2018, alleging (I) copyright infringement, 17 U.S.C. §§ 106, 501 (Compl. ¶¶ 48–60, ECF No. 1); (II) federal trademark infringement, 15 U.S.C. § 1114(1) (Compl. ¶¶ 61–67); (III) federal unfair competition, 15 U.S.C. § 1125(a) (Compl. ¶¶ 68–73); (IV) state trademark infringement and unfair competition, N.J.S.A. §§ 56:3-13.16, 56:4-1 (Compl. ¶¶ 74–76); and (V) common law unfair competition (*id.* ¶¶ 77–79). On November 26, 2018, Plaintiff requested that the Court enter an order to show cause why a preliminary injunction should not issue. (ECF No. 8.) For a number of reasons, a hearing on the present Motion for Preliminary Injunction was not held until

---

[2] The parties engaged in myriad other correspondence not detailed here. (*See* Mot. at 30–34, ECF No. 21-4.)

March 27, 2019, and the Motion was not decided until today.[3] The preliminary injunction sought by Plaintiff would prevent Defendants from using Plaintiff's copyrighted works, infringing Plaintiff's copyrights or trademarks, or "[u]nfairly competing with Plaintiff in any manner whatsoever." (Proposed Order at 2, ECF No. 21-1.) The matter is presently before the Court.

## LEGAL STANDARD

In order to obtain a preliminary injunction, the moving party must show: "(1) a reasonable probability of eventual success in the litigation, . . . (2) that it will be irreparably injured . . . if relief is not granted . . . (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d. Cir. 2017) (citing *Del. R. Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)). Then, "a district court—in its sound discretion—should

---

[3] In response to Plaintiff's request for a show cause order, the Court asked whether Defendants had been served on December 6, 2018. (ECF No. 9.) The next day, Plaintiff advised the Court that the parties were negotiating service and engaging in preliminary settlement discussions, and it asked the Court to hold in abeyance its request for a show cause order. (ECF No. 10.) On January 31, 2019, Plaintiff advised the Court that Defendants had now been served and renewed its request for a show cause order. (ECF No. 14.) Defendants then wrote to the Court stating that the case is subject to arbitration and thus "[t]here is no reason to force Defendants to respond to an Order to Show Cause." (ECF No. 15.) In response to these letters, the Court issued a Memorandum Order on February 5, 2019 that granted Plaintiff leave to move for a preliminary injunction, set an abbreviated briefing schedule, and instructed Plaintiff to address the arbitration issue. (Mem. Order, ECF No. 20.) Following the schedule set by the Court (*see id.*), Plaintiff filed the Motion for Preliminary Injunction on February 15, 2019 (ECF No. 21), Defendants opposed on February 25, 2019 (ECF No. 22), and Plaintiff replied on March 8, 2019 (ECF No. 25). The hearing, originally scheduled for March 18, 2019 (Mem. Order), was rescheduled for March 27, 2019 at Plaintiff's request (Letter, ECF No. 24; ECF entry dated 03/05/2019). At the hearing, the Court deferred ruling on the Motion so that the parties could attempt to settle the matter. (*See* Minutes Entry, ECF No. 37.) On April 12, 2019, Plaintiff informed the Court that the parties had not reached a settlement and requested a ruling on the Motion. (ECF No. 38.) On April 15, 2019, Defendants stated that they had suggested mediation but that Plaintiff had not responded. (ECF No. 39.) Defendants also requested "permission to finish the argument it did not conclude at the hearing either in person or via a short letter to the Court." (*Id.*) The Court permitted Defendants to submit a short letter concluding their argument (ECF No. 40), which Defendants submitted on April 18, 2019 (ECF No. 41).

balance those four factors so long as the party seeking the injunction meets the threshold on the first two." *Id.* (citing *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975)). The moving party must show a "significantly better than negligible but not necessarily more likely than not" ability to win on the merits and that "it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Id.* at 179 (collecting cases). "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Id.* at 179 (citing *Hoosier Energy Rural Elec. Coop. Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). The court retains "the traditional flexibility to granting interim equitable relief in which the district court has full discretion to balance the four factors once gateway thresholds are met." *Id.* at 178 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)). "[N]o test for considering preliminary equitable relief should be so rigid as to diminish, let alone disbar, discretion." *Id.*

## DISCUSSION

### I.  Arbitrability

As a preliminary matter, Defendants argue that the Agreement's arbitration clause requires this matter to be arbitrated. The Agreement requires arbitration of all actions and proceedings that involve "any controversies regarding this Agreement." (Agreement ¶ 14.) The question, then, is whether the present controversy is "regarding th[e] Agreement." When a contract has terminated, then only in limited circumstances can a dispute be said to arise under that contract and thus be arbitrable. *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205–06 (1991). Thus, there are two questions to be addressed: (1) Has the Agreement terminated? And (2) if it has terminated, is the present dispute nevertheless "regarding this Agreement" such that

5

the arbitration clause still applies?

      A.    *Has the Agreement Terminated?*

The Agreement requires termination to be in writing and personally delivered or mailed. (Agreement ¶¶ 3, 12.) Plaintiff presented evidence showing that Cheung mailed a termination letter to Defendant Kultur in March 2017. (Pl.'s Ex. I.) Defendants question whether this letter was actually mailed. But even if this letter was never sent, Plaintiff sent further correspondence reiterating its view that the Agreement was terminated. (Pl.'s Ex. J (noting "the many reasons behind our terminating"); Buckingham Letter Ex. C ("The Globe provided timely notice of termination . . . .").) A later letter—for example, Tennant's letter sent October 27, 2017—would have been sufficient to terminate the Agreement for the following term. Thus, the Agreement terminated, either in May 2017 or at some later time, as a result of Plaintiff's several written communications stating its desire to terminate.[4]

      B.    *Does the Arbitration Clause Apply to the Terminated Agreement?*

A controversy arises under an expired contract—and is therefore arbitrable—"only where [the controversy] involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where,

---

[4] Defendants argue that the Court cannot decide whether the contract has terminated, because that question is "regarding th[e] Agreement" and therefore must be arbitrated. On the contrary, a court can—indeed, must—make the factual determinations necessary to decide if a case should be arbitrated, even if those factual determinations overlap with questions on the merits that could themselves be arbitrable. *Litton*, 501 U.S. at 209 ("[W]e must determine whether the parties agreed to arbitrate this dispute, and we cannot avoid that duty because it requires us to interpret a provision of a bargaining agreement."); *Rite Aid of Pa., Inc. v. United Food & Commercial Workers Union, Local 1776*, 595 F.3d 128, 136–37 (3d Cir. 2010) (summarizing *Litton* and stating that deciding the arbitrability question "may, of necessity, touch incidentally on the merits" where there is an "entwining of the merits and agreed-upon arbitrability questions"); *Int'l Chem. Workers Union Council v. PPG Indus., Inc.*, 236 F. App'x 789, 793 (3d Cir. 2007) (interpreting a contract to decide arbitrability).

under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Litton*, 501 U.S. at 205–06. None of these situations apply here. The controversy does not involve pre-expiration facts or occurrences, because Plaintiff seeks prospective relief in the form of preliminary injunction; there is no accrued or vested right in the Agreement that is in dispute here;[5] and there is no principle of contract interpretation suggesting that any right at issue survives expiration. The present Motion therefore is not arbitrable under the Agreement.

## II.     Probability of Success on the Merits

Plaintiff has demonstrated a likelihood of success on the merits of its copyright infringement (Count I) and trademark infringement (Count II) claims.

As to the first, "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . ." 17 U.S.C. § 501(a). Those exclusive rights include the rights to reproduce and distribute. § 106. In this case, Defendants do not dispute that they continue to market and sell Plaintiff's copyrighted works.

As to the second,

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). Here, Defendants do not dispute that it continues to use Plaintiff's

---

[5] The Agreement grants promotional rights in perpetuity. (Agreement at 3 ("the exclusive and irrevocable right to use the present title of the Program, the names . . . likenesses . . . and biographical material of the performers [etc.] and the storyline of the Program . . . in the distribution, advertising publicity and promotion of any video format containing the Program").) But these rights are not in controversy here.

trademarks. Plaintiff has therefore established a probability of success on the merits.[6]

## III. Irreparable Injury

Harm that can be repaired through monetary damages is not irreparable. *Bennington Foods LLC v. St. Croix Renaissance Grp., LLP*, 528 F.3d 176, 178–79 (3d Cir. 2008) (internal citations omitted). On the other hand, "[g]rounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (internal citations omitted).[7]

In this case, Defendant Hedlund threatened to "bring down the market" by selling Plaintiff's copyrighted titles at a strictly discounted rate, seriously reducing Plaintiff's revenue. (Tennant Decl. ¶ 8.) More to the point, if an injunction were not issued, Defendant would almost certainly continue to sell Plaintiff's copyrighted works and use Plaintiff's trademark, depriving Plaintiff exclusive control of its intellectual property and potentially creating reputational harm. This kind of reputational harm would likely be irreparable, making injunctive relief necessary.

---

[6] Federal unfair competition law tracks federal trademark infringement law. *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). For this reason, Plaintiff can also demonstrate likely success on its federal unfair competition claim (Count III). However, the Court will not include in its Preliminary Injunction Order Plaintiff's requested language regarding unfair competition: "Defendants . . . are preliminarily enjoined from . . . [u]nfairly competing with Plaintiff in any manner whatsoever . . . ." (Proposed Order at 2.) Such language does not "describe in reasonable detail . . . the act or acts restrained." Fed. R. Civ. P. 65(d)(1)(C). Because enjoining Defendants from infringing Plaintiff's copyrights and trademarks is sufficient to protect Plaintiff's interests, the Court will not include language specifically addressing unfair competition.

[7] A finding of copyright or trademark infringement once created a presumption of irreparable harm. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983) (copyright); *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196–97 (3d Cir. 1990) (trademark). This is no longer the case after the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393–94 (2006). *Broadcase Music, Inc. v. Publick House Partners, LLC*, 2015 U.S. Dist. LEXIS 67639, at *9–11 (D.N.J. May 26, 2015) (copyright); *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 216 (3d Cir. 2014) (trademark).

*See Telebrands Corp. v. NewMetro Design, LLC*, 2016 U.S. Dist. LEXIS 157580, at *61 (finding that the threat of future copyright infringement "with the attendant loss of control of reputation, trade, and good will" constitutes irreparable injury).

Significant time has passed since the Agreement's termination (and the beginning of Defendants' infringement). This could weigh against a finding of irreparable harm. *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 117–18 (3d Cir. 2013) (internal citation omitted).  But Plaintiff spent this long time period in near-constant correspondence with Defendants, attempting to arrange a resolution without resorting to a court order. "[D]elay may be excused where the party seeking a preliminary injunction delays only in the reasonable belief that negotiations may resolve the dispute," *id.* at 118 (internal citation omitted), and such a circumstance existed here.

For these reasons, Plaintiff has demonstrated that it will be irreparably harmed if a preliminary injunction does not issue.

**IV.     Possibility of Harm to Other Interested Persons**

Defendants would not be able to sell Plaintiff's works if an injunction were to issue. However, if a party "openly, intentionally, and illegally appropriated [another's] marks, [it] can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself." *Opticians*, 920 F.2d at 197. Additionally, Defendants sell many other products, so any harm to its total sales would be small. (Mot. at 21 (citing About Us, http://www.kulturvideo.com/aboutus.asp (last visited Feb. 11, 2019).) Harm to Defendants, therefore, pales in comparison to the harm Plaintiff would incur if an injunction did not issue. The Court finds that the possibility of harm to other interested persons is minimal, weighing in favor of a preliminary injunction.

9

## V. The Public Interest

"[I]n a trademark case, [the public interest] is most often a synonym for the right of the public not to be deceived or confused." *Pappan Enters. v. Hardee's Food Sys.*, 143 F.3d 800, 807 (3d Cir. 1998) (quoting *Opticians*, 920 F.2d at 197). Defendants' continued infringement of Plaintiff's copyrights could deceive the public by wrongly attributing Defendants' activity to Plaintiff.

Defendants argue, "Plaintiff has repeatedly indicated that it intends to pursue financial damages in future litigation under the [Agreement]. Deciding the injunction now will require a subsequent decision maker . . . to resolve the same issues to ascertain Plaintiff's alleged damages. Efficiency warrants denial of the injunction." (Opp'n at 15.)[8] This consideration weighs somewhat against granting an injunction. However, it is matched by the public harm—described above—that would occur if Defendants were allowed to continue their infringing activities. For this reason, the public interest factor is close and does not weigh strongly in one direction or the other.

## CONCLUSION

Plaintiff has demonstrated a reasonable probability of success on the merits and irreparable injury if a preliminary injunction does not issue, and the balance of the four factors tips in Plaintiff's favor. Therefore, Plaintiff's Motion for Preliminary Injunction is granted. An appropriate Order will follow.

Date:   4/22/19                                             */s/ Anne E. Thompson*
                                                            ANNE E. THOMPSON, U.S.D.J.

---

[8] According to Plaintiff, it never indicated that it *intends* to pursue damages, only that it *reserves its rights* to do so. (Reply at 15.)